IN THE UNITED STATES DISTRICT COURT FOR THE
WESTERN DISTRICT OF MISSOURI
SOUTHWESTERN DIVISION

DORIS I. TABER, )
)
      Plaintiff, )
) Civil Action
vs. ) No. 05-5051-CV-SW-JCE-SSA
)
JO ANNE B. BARNHART, )
Commissioner of Social Security, )
)
      Defendant. )

**O R D E R**

      Plaintiff is appealing the final decision of the Secretary denying her application for disability insurance benefits under Title II of the Act, 42 U.S.C. § 401 et seq. Pursuant to 42 U.S.C. § 405(g), this Court may review the final decisions of the Secretary. For the following reasons, the Secretary's decision will be reversed.

Standard of Review

      Judicial review of a disability determination is limited to whether there is substantial evidence in the record as a whole to support the Secretary's decision. 42 U.S.C. § 405(g); e.g., Rappoport v. Sullivan, 942 F.2d 1320, 1322 (8th Cir. 1991). Substantial evidence is "'such evidence as a reasonable mind might accept as adequate to support a conclusion.'" Richardson v. Perales, 402 U.S. 389, 401 (1971) (quoting Consolidated Edison Co. V. NLRB, 305 U.S. 197, 229 (1938)). Thus, if it is possible to draw two inconsistent positions from the evidence and one position represents the Agency's findings, the Court must affirm the decision if it is supported on the record as a whole. Robinson v. Sullivan, 956 F.2d 836, 838 (8th Cir. 1992).

1

In hearings arising out of an application for benefits, the claimant has the initial burden of establishing the existence of a disability as defined by 42 U.S.C. §§ 423(d)(1) and 1382c(a)(3)(A).  Wiseman v. Sullivan, 905 F.2d 1153, 1156 (8th Cir. 1990).  In order to meet this burden, the claimant must show a medically determinable physical or mental impairment that will last for at least twelve months, an inability to engage in substantial gainful activity, and that this inability results from the impairment.  Id.  Once a claimant demonstrates that the impairment is so severe as to preclude the performance of past relevant work, the burden shifts to the Secretary to prove some alternative form of substantial gainful employment that claimant could perform.

The standard by which the ALJ must examine the plaintiff's subjective complaints of pain is well settled.  The ALJ must give full consideration to all of the evidence presented relating to subjective complaints, including the claimant's prior work record, and observations by third parties and treating and examining physicians relating to such matters as the claimant's daily activities, the duration and frequency of pain, precipitating and aggravating factors, dosage and effects of medication, and functional restrictions.  Polaski v. Heckler, 739 F.2d 1320, 1322 (8th Cir. 1984).   When rejecting a claimant's subjective complaints, the ALJ must make an express credibility determination detailing the reasons for discrediting that testimony, and discussing the factors set forth in Polaski.  The ALJ must give full consideration to all of the relevant evidence on the Polaski factors and may not discredit subjective complaints unless they are inconsistent with the evidence in the record as a whole.  Haynes v. Shalala, 26 F.3d 812, 814 (8th Cir. 1994).

## Discussion

2

Plaintiff was 58 years old at the time of the hearing before the ALJ. She alleges disability on July 2, 2002, due to fibromyalgia. She dropped out of high school in ninth grade, and got her GED in 1977. Her past relevant work includes jobs as a hand packager, security guard, cook, companion, and envelope machine operator.

The ALJ found that plaintiff has not engaged in substantial gainful activity since July 7, 2002. He further found that the medical evidence established that plaintiff has fibromyalgia. It was the ALJ's finding that plaintiff was not entirely credible because of her daily activities, life style, and medical history. He found that plaintiff had the residual functional capacity ["RFC"] to lift and carry 20 pounds occasionally and 10 pounds frequently; to stand and/or walk 6 hours in a workday; sit 6 hours in a workday; the capacity for unlimited pushing/pulling and to occasionally bend, stoop, crouch, kneel, crawl, climb and balance; and that she should avoid concentrated exposure to cold and vibration. He further found that she had no manipulative, visual, or communicative limitations. The ALJ found that plaintiff was able to perform her past relevant work as a companion. Therefore, he found that she is not under a disability as defined by the Act.

Plaintiff contends that the ALJ's decision should be reversed because he erred in the RFC finding; erred in failing to consider the opinion of a specialist; erred in considering her bipolar disorder, anxiety, and depression as non-severe; and erred in his credibility determination.

Plaintiff testified at the hearing that she had to stop work because of muscle spasms. After she had physical therapy, which did not help, she went to a doctor who conducted tests and diagnosed her with fibromyalgia. She has experienced chronic pain for three and a half years in her neck, shoulders, arms, legs, and over her whole body. She also has a torn ligament in her

shoulder. The pain may be induced from stress or the weather, or sometimes it occurs when she is just sitting. She is tired all the time. She does stretches to help, gets an occasional massage, but found that physical therapy aggravated her condition. She has swelling in her joints, appetite problems, has lack of strength in her hands, problems with grasping, and has problems reaching, bending, and twisting. Her house work is limited, and she has to have help with most of it. Her husband helps her with the laundry and the mopping, although she can still cook and wash dishes. She has to take breaks when she's cooking or doing dishes, however, and has to go back several times to finish something. She has problems sitting and walking, and uses oxygen if she is going to walk any distance during the day. When she goes to the store, she stops and sits on a bench to take a break. She thought she could sit for about 20 minutes, and walk about two or three blocks before she would have to stop for a break. She believed she could carry about ten pounds, depending on how far she had to go. Plaintiff testified that she has problems with anxiety and depression, because she is overwhelmed by her inability to do things. She stated that the depression is new to her, because she is "a very outgoing, easy going person." [Tr. 232]. She cries easily, is frustrated easily, initially had some suicidal thoughts, and has panic attacks. She can be in a store where there are too many people around and she feels like she can't breathe. She also has problems sleeping about every night, and had a sleep deprivation test, which indicated that her oxygen level drops at night. This causes her to wake up. Therefore, she has to have oxygen at nighttime, as well as when she is going to walk any distance. Pain also wakes her up. Plaintiff testified that her depression causes her to have mood swings, and that it's affecting her life with her family and friends because she avoids everyone. She no longer feels like walking or hiking, playing ball, or playing with the grandchildren. Plaintiff stated that she

4

drives maybe 50 miles a week. She goes to church and to her daughter's occasionally. She walks her dogs for about five minutes, and enjoys reading. She has to lie down during the day to relax, and sometimes goes to sleep. She will rest for fifteen minutes or more on the couch, and may often sleep for an hour when she lies down. The side effects of her medication cause her to be reclusive, and diminishes her appetite. It was her testimony that she has always been active and worked at an active job, and that the person she used to be has disappeared. Her condition has "taken its toll on [her] mentally and physically." [Tr. 235].

In this case, the medical records indicate that plaintiff has been diagnosed with chronic pain and fibromyalgia, and has complained of continued neck, shoulder, and low back pain for several years. The records also indicate that she has repeatedly complained of pain, fatigue, problems sleeping, anxiety, and depression to various doctors who have treated her. A diagnosis of fibromyalgia has been made by Dr. Michael Payne, D.O., Dr. Yvonne M. Agius, M.D., and Dr. Chara Solich, M.D., who is a rheumatologist. Dr. Solich also assessed plaintiff with possible polymyalgia rheumatica. She was referred to Dr. Thomas Corsolini, M.D. for a consultative physical examination. He concluded that he was unable to make a specific physical diagnosis, although he found 12 tender points. Dr. Van Kinsey, M.D., a medical consultant for Disability Determinations Services, assessed her with fibromyalgia. She was evaluated by St. John's Physical Therapy Clinic, where she was assessed with upper and lower extremity range of motion within functional limitations, but with limitations in areas such as flexion and rotation in her neck and trunk limited by muscle tightness, pain and guarding, right shoulder flexion limited by pain and weakness, and tenderness in the upper and lower back. Right shoulder x-rays showed only minimal arthritic change, despite her complaints of severe pain, and an EMG of the

5

upper right extremity was normal in July of 2004. Plaintiff has received a wide range of medications for pain and for depression. These medications include, among others, Zoloft, Paxil, Soma, Percocet, Ativan, and Oxycodone. She also underwent a sleep deprivation study, which indicated that her oxygen levels drop at night.

According to the claimant questionnaire, plaintiff indicated that she could not clean her home without weakness, pain and fatigue; that she only slept about four hours a night due to pain; that she cooks differently because she cannot stand as long as she used to; that her husband helps with the mopping; that she has to go to the store more frequently because she tires so easily; that when she drives, she has to stop or stretch often; that she does the things "most wives do," [Tr. 108]; that she does not like to leave home because she needs to rest often and she feels better at home; that she is easily upset; and that she is easily depressed because the pain has changed her life.

Having carefully reviewed the record in its entirety, the Court concludes that there is not substantial evidence to support the ALJ's finding regarding plaintiff's credibility. In evaluating a claimant's allegations, the ALJ must consider, in addition to the medical evidence, the Polaski factors. These include prior work history, daily activities, duration and intensity of pain, effectiveness and side effects of medication, aggravating factors, and functional restrictions. Bowman v. Barnhart, 310 F.3d 1080, 1083 (8th Cir. 2002).

In this case, plaintiff testified regarding the fact that she suffered from fibromyalgia, chronic pain, fatigue, and depression. She testified that she suffers from anxiety, frustration, panic attacks where she couldn't breath, and sleeping problems. She also has difficulty dealing with people, including her family because of a low tolerance level. She described her need to

6

take frequent breaks when she engages in every day activities, and her need to rest and/or sleep during the day because of the pain and fatigue from the fibromyalgia. Although she had a solid work history, with increased earnings at the last job she held before she quit working, she stated that she was no longer able to work because of the symptoms of her illness, which included pain, muscle spasms, and fatigue.

The Court finds that the ALJ did not support his findings of lack of credibility with facts in the record. It is well-established by the medical records in this case that plaintiff suffers from fibromyalgia, which causes her pain and which limits her ability to perform her daily activities. In Cline v. Sullivan, 939 F.2d 560, 566 (8th Cir. 1991), the Eighth Circuit recognized that fibromyalgia involves "pain in the fibrous connective tissue components of muscles, tendons, ligaments, and other white connective tissue. Fibromyalgia often leads to a distinct sleep derangement which contributes to a general cycle of daytime fatigue and pain." 939 F.2d at 563. Plaintiff's testimony was consistent with this cycle. It is accepted, moreover, that fibromyalgia, while not necessarily completely debilitating, can result in levels of pain and discomfort that limit work capacity. Id. A full review of the record indicates that the level of medical treatment plaintiff has sought lends support to her claims of debilitating pain and fatigue from fibromyalgia, as the record includes repeated diagnoses of that disease. Even the consultative examiner, despite not making a conclusive diagnosis, found twelve tender points. The rheumatologist opined that she might possibly have polymyalgia rheumatica. The physical therapists documented various areas of pain, tightness, and weakness.

The ALJ discredited plaintiff in large part because he found that her daily activities were inconsistent with her complaints of disabling pain. The Eighth Circuit has "repeatedly held,

however, that 'the ability to do activities such as light housework and visiting with friends provides little or no support for the finding that a claimant can perform full-time competitive work.'" Baumgarten v. Chater, 75 F.3d 366, 369 (8th Cir. 1996) (internal citations omitted). Based on a full review of the record, the Court finds that it cannot be said that plaintiff's rendition of her daily activities is inconsistent with her subjective complaints. The record indicates that when she drives, she has to take breaks to rest or stretch, and that she has to have help with some household chores. The fact that she walks her dogs for five minutes, drives to visit her daughter or attend church services, or cooks meals, although differently than she used to, and enjoys reading, does not establish that she is capable of performing full-time competitive work. "To establish disability, [plaintiff] need not prove that her pain precludes all productive activity and confines her to life in front of the television." Id. at 369. She testified regarding a complete change in her ability to interact with friends and family. She reiterated her desire to work, which is demonstrated by her solid work history and an unsuccessful work attempt after her alleged onset date of disability, which she quit because of her impairments.

The ALJ rejected plaintiff's rendition of her subjective complaints without discussing substantial inconsistencies in the record or otherwise supporting his decision to discount plaintiff's complaints. He rejected her complaints of depression because she had not required medical treatment or hospitalization. The record indicates, however, that she had complained of depression and anxiety, has been diagnosed with major depression, and has been prescribed medication for these conditions. Additionally, he did not take into account plaintiff's steady work history. It is clear that the ALJ did not conduct the analysis required by Polaski, nor did he adequately state his reasons for disbelieving plaintiff. The Court finds that the ALJ erred in

8

discrediting plaintiff's subjective complaints by not making express findings that include substantial, relevant and supporting evidence explaining his reasons for discrediting her. Polaski, 739 F.2d at 1322; Ghant v. Bowen, 930 F.2d 633, 637 (8th Cir. 1991). Accordingly, the Court finds that the decision should be reversed.

Based on the foregoing, the Court finds that there is not substantial evidence in the record to support the ALJ's decision that plaintiff is not disabled. Accordingly, the decision of the Secretary should be reversed.

It is hereby

ORDERED that plaintiff's motion for judgment on the pleadings be, and it is hereby, granted. It is further

ORDERED that, pursuant to 42 U.S.C. Section 405(g), this matter be remanded to the Commissioner for the calculation and award of benefits.

/s/ James C. England
JAMES C. ENGLAND, CHIEF
United States Magistrate Judge

Date: 9/29/06